UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TOMMIE JAMES EZELL,

        Petitioner,

                                         Case No. 1:04-cv-214
v.                                      Hon.  Gordon J. Quist

JOHN CASON,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

Petitioner was convicted of crimes committed in the early morning hours of September 17, 1999.  The Michigan Court of Appeals summarized the underlying facts of the crimes as follows:

> Defendant and a partner broke into a residence in Grand Rapids, where they assaulted and robbed Marvin Trotter [sometimes referred to as Lamont Trotter] and Michael Kukawski.  Defendant asserted at trial that the robbery was a hoax, concocted by Trotter, and that Trotter and Kukawski were beaten because the robbery had to look real.  Defendant stated that Trotter owed drug money to a local gang and thought that the debt would be forgiven if the gang knew that Trotter had been robbed.  Defendant testified that he went along with the plan because Trotter threatened to tell one of the gang members that defendant had identified him to the police in connection with a murder.

*People v. Ezell*, No. 229369 (Mich. App. July 19, 2002), slip op. at 1.

Following a jury trial, petitioner was convicted of armed robbery, M.C.L. § 750.259, first-degree home invasion, M.C.L. § 750.110a(2), felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during commission of a felony, M.C.L. 750.227b. *Id.* He was sentenced as a second habitual offender, M.C.L. § 769.11, to concurrent sentences of 22 1/2 to 75 years' imprisonment on the armed robbery conviction, 17 1/2 to 40 years' imprisonment on the first-degree home invasion conviction, three to eight years' imprisonment on the felon in possession of a firearm conviction, and a consecutive two-year sentence on the felony-firearm conviction. *Id.*

Petitioner raised three issues in his direct appeal to the Michigan Court of Appeals:

I.      Should Mr. Ezell be granted a "*Ginther*" hearing, where his trial counsel failed to call the only witness who could corroborate his claim that the "armed robbery" was a hoax, and where the record is insufficient for this court to adjudicate his claim of ineffective assistance?

II.     Should the case be remanded for an evidentiary hearing before a different judge, where the trial court, in denying Mr. Ezell's post-judgment motion, judged a witness' credibility without hearing the witness, made decisions based on unfounded speculation regarding strategy discussions between defendant and his counsel, and further based his decision on facts not of record, but within the judge's personal knowledge of events, which the judge acquired in previous trials?

III.    Were the numerous instances of prosecutorial misconduct so prejudicial to Mr. Ezell they denied him a fair trial?

The Michigan Court of Appeals affirmed petitioner's conviction. *Id.* Petitioner raised the same issues in a *pro se* application for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Ezell*, No. 122287 (Mich. March 31, 2003).

In his habeas corpus petition, petitioner raised the same issues (restated in four issues):

2

I.      The state courts abridged petitioner's due process clause right to an "adequate and effective" appeal, where he was deprived of an evidentiary hearing "largely forfeiting" his claim that trial counsel failed to call the only witness who could corroborate his claim that the armed robbery was a hoax, and where the record was insufficient for the courts to fairly adjudicate his claim of ineffective assistance of counsel.

II.     Petitioner was denied his right to effective assistance of trial counsel which is guaranteed by the Sixth Amendment to the United States Constitution, where trial counsel utterly failed to investigate and call the only witness who could corroborate the defense theory that the robbery was a hoax.

III.    Petitioner was denied his Fourteenth Amendment due process clause right to [a] fair and impartial judge, where the state trial court judge, in denying petitioner's post judgment motion for a new trial, usurped the role of the jury, and judge[d] a witness['] credibility without hearing the witness, and specifically where the judge made a decision on facts not of record, but within the judge's personal knowledge of events, which the judge acquired in previous trials.

IV.     Petitioner was denied his Fourteenth Amendment due process clause right to [a] fair trial where the prosecutor engaged in numerous instances of prosecutorial misconduct.

Petition at 4-5; Petitioner's Memorandum of Law at i.

## II.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.   *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.

3

1994); *see* 28 U.S.C. §2254(b)(1)(A).  In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 342 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, 426 F.3d at 342, *citing Williams*, 529 U.S. at 412-13.

A determination of a factual issue by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness

4

by clear and convincing evidence that the state court's determination was erroneous.  *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.    Procedural default of Issue IV (prosecutorial misconduct)

Petitioner raised the issue of prosecutorial misconduct on direct appeal.  However, the Michigan Court of Appeals did not address the merits of this claim because petitioner did not object to the comments at trial.  *People v. Ezell*, No. 229369 (Mich. App.), slip op. at 2.  The court performed a limited "plain error" review of this claim and concluded that petitioner was not denied a fair trial as a resulted of the alleged prosecutorial misconduct.  *Id.*, slip op. at 2-4.

Under Michigan law,  "issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123(1994).  The rule that a defendant who waives an objection may not seek appellate review of a claimed deprivation of his rights was a regularly followed procedural rule prior to petitioner's trial. *See, e.g.*, *People v. Pollick*, 448 Mich. 376, 386-88; 531 N.W.2d 159 (1995), *quoting People v. Hardin*, 421 Mich. 296, 322-23; 365 N.W.2d 101 (1984) (enforcing contemporaneous objection rule and noting that the court did not approve a procedure whereby counsel may "sit back and harbor error to be used as an appellate parachute in the event of jury failure").  As reflected in the Michigan Court of Appeals opinion, the contemporaneous objection was firmly established and regularly followed at the time of petitioner's appeal.  *People v. Ezell,* , No. 229369 (Mich. App.), slip op. at 2.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

5

violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A state procedural rule will support an application of the procedural default doctrine only if the rule was "firmly established and regularly followed" at the time it was applied. *Ford v. Georgia*, 498 U.S. 411, 424 (1991). "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). In the present case, it appears that petitioner has defaulted his federal claim for prosecutorial misconduct raised in habeas Issue IV. Accordingly, this claim is subject to a procedural default analysis.

Michigan's contemporaneous objection rule is a sufficient procedural ground to foreclose review of a habeas petitioner's claim. *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir. 2003). Even though the state court provided limited review of the issues raised, petitioner's failure to object is still considered a procedural default. *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). *See also Toler v. McGinnis*, 23 Fed.Appx. 259, 269 (6th Cir. 2001) (failure to object to allegations of prosecutorial misconduct at trial constitutes a procedural default under Michigan law). Accordingly, petitioner's Issue IV is procedurally defaulted.

Petitioner has not shown cause for the procedural default. His failure to demonstrate cause prevents federal habeas review of this claim unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court explained the limited application of the fundamental miscarriage of justice exception:

6

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the district court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. *See, e.g., Paffhousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000) ("[i]n order to establish actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.*

Petitioner presents no new evidence that he is actually innocent of the crime for which he was convicted. Accordingly, petitioner's procedural default precludes habeas review of Issue IV.

### IV.     Petitioner's remaining claims

### A.     Trial court's denial of evidentiary hearing (Issue I)

Petitioner contends that the trial court deprived him of an effective appeal by refusing to remand for a hearing pursuant to *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973). Petitioner's claims arise from a post-conviction motion for a new trial brought pursuant to a Michigan state court rule, MCR 6.431, which provides that "[o]n the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." In his motion, petitioner requested an evidentiary hearing to decide whether a new trial should be ordered on the basis of the

7

evidence presented in the affidavit of Vonte Shaw and to determine whether petitioner's counsel was ineffective for failing to produce Mr. Shaw as a witness.  Motion Trans. at 14.

In Michigan, a post-trial *Ginther* hearing may be ordered if the record has not been sufficiently developed with respect to an ineffective assistance of counsel claim. *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004); *Robinson v. Stegall*, 355 F.3d 916, 919 n. 1 (6th Cir. 2004). The Michigan Court of Appeals summarily denied petitioner's claims of error as follows:

> On appeal, defendant first argues that this case should be remanded for a *Ginther* [FN 1] hearing in order to take the testimony of his trial counsel.  However, on November 20, 2001, we denied defendant's motion for remand for this same purpose and defendant has presented no basis for reconsideration of that decision.  Therefore, we turn to the merits of defendant's ineffective assistance of counsel claim; our review is limited to the facts on the record.  *People v. Hoag*, 460 Mich. 1, 6; 594 N.W.2d 57 (1999) [FN 2].
>
> [FN1]  *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973).
>
> [FN2]  Because we conclude that a remand is unwarranted, we will not address defendant's argument that a different judge should hear the remand.

*Ezell*, No. 229369, slip op. at 1-2.[1]

## 1.    Petitioner's claim regarding *Ginther* hearing

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Whether petitioner was entitled to a *Ginther* hearing is a matter

---

[1] In its one-sentence order denying petitioner's motion for a remand, the Michigan Court of Appeals denied petitioner's motion "for failure to persuade the Court of the necessity of a remand at this time." *Ezell,* No. 229369 (Order, Nov. 20, 2001).

of state law as set forth in the Michigan Supreme Court's decision of *People v. Ginther*, 390 Mich. 436. Here, both the trial court and the Michigan Court of Appeals denied petitioner's request for a *Ginther* hearing. The Michigan Supreme Court let this decision stand. In a federal habeas corpus proceeding, it is not the province of the federal court to review the decision of a state's highest court on a matter of purely state law. *See Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981). Accordingly, petitioner's claim that the state courts improperly refused his request for a *Ginther* hearing is not cognizable on federal habeas review.

### 2.        Petitioner's Fourteenth Amendment claim

Next, petitioner contends that the state court's failure to order a *Ginther* hearing violated his Fourteenth Amendment right to pursue an "adequate and effective" appeal. Petitioner relies on *Evitts v. Lucey*, 469 U.S. 387, 392 (1985), which states in pertinent part that "the Fourteenth Amendment guarantees a criminal appellant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal 'adequate and effective.'" The federal Constitution does not require the states to grant appeals as of right to criminal defendants. *Id.* at 393. However, if a state creates appellate courts to adjudicate the guilt or innocence of criminal defendants, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.*

In *Ginther*, the Michigan Supreme Court established a procedure by which a criminal defendant may seek an evidentiary hearing to establish a claim of ineffective assistance of counsel. Petitioner presents no authority, and this court is aware of none, that requires the Michigan state courts to grant all criminal defendants a *Ginther* hearing as part of their direct appeal. A *Ginther*

9

hearing is discretionary under Michigan state law.  *See People v. Swanton*, No. 244022, 2004 WL 1121875 at *1, *4 (Mich. App. Jan. 15, 2004) (trial court's decision to deny *Ginther* hearing is reviewed for abuse of discretion); *People v. Calvert*, No. 242187, 2003 WL 22928923 at *2 (Mich. App. Dec. 11, 2003) (same).  When a request for a *Ginther* hearing is denied,  the criminal defendant is not barred from bringing an ineffective assistance of counsel claim on appeal.  Rather, the appellate court reviews such claims based upon the existing record.  *See, e.g.,  People v. Snider*, 239 Mich.App. 393, 423, 608 N.W.2d 502 (2000).  Accordingly, petitioner's Fourteenth Amendment claim is without merit.

### B.      Effective assistance of trial counsel (Issue II)

Next, petitioner contends that he was denied the effective assistance of trial counsel. Petitioner contends that his counsel was ineffective because counsel failed to investigate and call Vonte Shaw, a witness who could corroborate the defense theory that Mr. Trotter agreed to stage the robbery as a hoax.  The Michigan Court of Appeals addressed petitioner's claim as follows:

> The right to counsel guaranteed by the United States and Michigan Constitutions, U.S. Const, Am VI; Const 1963, art 1, § 20, is the right to effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 654; 104 S Ct 2039; 80 L.Ed.2d 657 (1984); *People v. Pubrat*, 451 Mich. 589, 594; 548 NW2d 595 (1996). To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Cronic*, supra, at 657; *People v. Toma*, 462 Mich. 281, 302; 613 NW2d 694 (2000). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v. Stanaway*, 446 Mich. 643, 687; 521 NW2d 557 (1994). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to the defendant, *People v. Stubli*, 163 Mich.App 376, 379; 413 NW2d 804 (1987), or by showing a failure to meet a minimum level of competence, *People v. Jenkins*, 99 Mich.App 518, 519; 297 NW2d 706 (1980).

Defendant asserts that his trial counsel was ineffective because she failed to call a witness who would have corroborated the defense theory that the armed robbery was a hoax. According to affidavits submitted below, the witness would have testified that on the night of the robbery, he overheard a conversation between defendant and Trotter in which Trotter told defendant to "come through the side door and make it look good." The witness would have also testified that he asked Trotter what the conversation was about and that Trotter responded, "Nothing, just something we've got going on tonight."

The failure to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court will not substitute its judgment for that of counsel in a matter of trial strategy. *People v. Avant*, 235 Mich.App 499, 508; 597 NW2d 864 (1999). Here, it is apparent from the record that defendant's trial counsel knew of the existence of the witness. However, defendant does not assert that his trial counsel refused to call the witness, who, at the time of trial was incarcerated for a felony conviction, against defendant's desires. Moreover, while the witness' testimony could be construed as corroborative of defendant's theory, it was ambiguous and not exonerating. Given the credibility issues stemming from the witness' criminal history and the ambiguous nature of the proposed testimony, we conclude that defendant has not overcome the presumption that not calling the witness constituted sound trial strategy. Therefore, we hold that defendant was not denied effective assistance of counsel on that ground.

*Ezell*, No. 229369, slip. op. at 2.

Petitioner's claim is straightforward. Petitioner testified that Mr. Trotter arranged the robbery as a hoax. Trial Trans. III at 69-71. Mr. Trotter denied that he set up the robbery or approached petitioner to perform the robbery. Trial Trans. III at 143-44, 146. Petitioner contends that, based upon Mr. Shaw's affidavit, Shaw would have corroborated petitioner's testimony that Mr. Trotter arranged the robbery. Based on these facts, petitioner contends that his counsel was ineffective for failing to investigate Mr. Shaw and present him as a witness at trial.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine when ineffective assistance of counsel exists: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's

deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." The reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

In reviewing claims of ineffective assistance of counsel, the court is mindful that "[t]he Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3 (6th Cir. 1998), *citing Strickland*, 466 U.S. at 690. Neither does the Constitution guarantee petitioner "an excellent lawyer" or a "good lawyer." *Id.* at *5, *citing Strickland*, 466 U.S. at 687. Rather, "the Sixth Amendment right to the effective assistance of counsel entitles [a criminal defendant] to nothing more than a 'reasonably competent attorney' whose performance falls 'within the range of competence demanded of attorneys in criminal cases.'" *Id.*

### 1.    Counsel's investigation of Mr. Shaw

"[C]ounsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. While "[d]efense attorneys do not have an absolute duty to investigate," *Goldsby v. United States*, 152 Fed. Appx. 431, 435 (6th Cir. 2005), the failure to investigate and interview promising witnesses constitutes negligence, not trial strategy. *See Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir.1992). "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgments." *Rompilla v. Beard*, -- U.S.---, 125 S. Ct. 2456, 2462 (2005).

Here, petitioner contends that defense counsel failed to investigate Mr. Shaw and then failed to call him as a witness.  As the Michigan Court of Appeals observed, counsel was aware of Mr. Shaw.  At trial, Mr. Trotter testified that he arrived at the Halfmoon Bar at 10:30 or 11:30 on the night of September 16, 1999, and that he spoke to petitioner at the bar.  Trial Trans. II  at 91-95 (docket no. 16).  On cross-examination, petitioner's counsel asked Mr. Trotter if he knew Mr. Shaw and Trotter stated "yeah."  *Id.*  at 98.  Counsel asked Mr. Trotter whether he and petitioner "had any conversation with Mr. Shaw that evening" at the Halfmoon Bar.  *Id.*  Mr. Trotter responded that "[w]e may have all talked. Yeah."  *Id.*  Counsel did not inquire into the nature of the conversation.

Petitioner bases his failure to investigate argument on statements set forth in an affidavit obtained from Mr. Shaw some ten months after the trial.  In this brief affidavit, Mr. Shaw states as follows:

> I entered the [H]alfmoon sometime after midnight, then I proceeded to go inside.  I had talked to Lamont Trotter earlier that day and we decided to meet each other down there.  After I was inside about five minutes I saw Lamont.  He was in the lobby talking to Tommy Ezell at a table.  I walked over to say what's up, but they were involved in a conversation.  I heard Lamont tell Tommy to come through the side door, and make it look good.  After they were through talking I asked Lamont, "What was that about?"  He said, "Oh! Nothing, just something we've got going on tonight."  I didn't remember until a couple of days later that Lamont told me about some guys he owed alot of money to.  The night of the club was 9-17-99.

Shaw affidavit (2/14/01), attached to petitioner's appellate brief as Appendix A (docket no. 20).  Mr. Shaw was incarcerated at the Saginaw Correctional Facility at the time he signed the affidavit.  *Id.*  Petitioner's appellate counsel presented this affidavit to the trial court as part of his motion for a new trial and a *Ginther* hearing.  Motion Trans. at 4-5 (2/23/01) (docket no. 19).  In his motion, petitioner sought a new trial to present Mr. Shaw's testimony. *Id.*  The court denied petitioner's motion,

13

observing that "there is every reason to believe the non-production of Mr. Shaw at trial was a strategic decision by counsel and the defendant." *Id.* at 19.

The record does not demonstrate that counsel was deficient for failing to investigate Mr. Shaw.  Counsel performed at least a limited investigation because she was aware that Mr. Shaw spoke with both Mr. Trotter and petitioner a hours before the robbery.  However, the extent of counsel's investigation is unknown.  Petitioner has provided the court with a cryptic affidavit from his counsel, Ms. Helen Nieuwenhuis, which purportedly relates to counsel's decision not to call Shaw as a witness.  The affidavit provides in pertinent part as follows:

> 2.    Mr. Ezell has written me regarding a witness he states he wanted to call at trial.
>
> 3.    I have had many, many cases since representing Defendant Ezell and cannot recall whether we had conversations regarding a potential witness in this case.
>
> 4.    I have no independent recollection of the alleged witness' potential testimony or specifically why I did not call/interview a potential witness.

Nieuwenhuis Aff. (6/28/04) attached to petitioner's reply.  Counsel's affidavit does not specifically name Mr. Shaw as the "potential witness."  However, in paragraph 4, counsel states that she has no "independent recollection" of "why I did not call/interview a potential witness."  The court has no reason to believe that counsel would give any more enlightening testimony on this issue at an evidentiary hearing.

The court notes that petitioner obtained affidavits from his counsel and Mr. Shaw in an effort to demonstrate that counsel was ineffective for failing to investigate Shaw as a witness. Noticeably absent from the record is an affidavit from petitioner (1) outlining his discussions with counsel with respect to Mr. Shaw's involvement, and (2) explaining the appearance of  Shaw's

14

affidavit some ten months after petitioner's trial. Petitioner's interaction with counsel is critical in determining whether counsel acted reasonably. As the Supreme Court explained in *Strickland*:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland*, 466 U.S. at 691.

Petitioner provides no evidence to support his claim that counsel was deficient in failing to investigate Mr. Shaw. While it is tempting to fault counsel in hindsight for failing to present Mr. Shaw as a witness, nothing in the record indicates that counsel acted unreasonably at the time the investigative decisions were made. *See Rompilla*, 125 S. Ct. at 2462. While Mr. Shaw produced an affidavit from his prison cell some ten months after petitioner's trial, nothing in the record suggests that he was forthcoming with any of this information prior to petitioner's conviction. Accordingly, petitioner's claim that counsel was deficient for failing to adequately investigate this witness fails.

### 2.     Counsel's decision not to call Shaw as a witness

Next, petitioner contends that counsel was ineffective for failing to call Mr. Shaw as a witness. Assuming that counsel had performed a limited investigation into Mr. Shaw, her decision to call, or not to call, a particular witness is a strategic decision generally not subject to review.

*United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). "The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Id.* "Decisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 Fed.Appx. 309, 311 (6th Cir. 2003). *See Cathron v. Jones*, 77 Fed.Appx. 835, 841 (6th Cir. 2002) ("[u]nder *Strickland*, we must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy").[2] A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). Accordingly, petitioner must overcome a presumption that the challenged action might be considered sound trial strategy. *Id.*

Petitioner has not overcome the presumption that counsel made a strategic decision not to call Shaw. In closing argument, petitioner's counsel presented a two-pronged theory to the jury. First, that petitioner did not have intent to commit armed robbery. Trial Trans. III at 166. Second, that petitioner did not commit a home invasion because he had permission to be in Mr. Trotter's house. *Id.* Petitioner testified that he performed the hoax robbery based upon the following scenario: that petitioner gave Mr. Trotter's cousin's name [Eddie Trotter or E-Monster] to police as being involved in the murder of Kwaze Kelly; that Mr. Trotter knew petitioner had given

---

[2] As the court previously discussed, it appears that an evidentiary hearing would shed little light on counsel's strategic decision, given her statement that she had "no independent recollection of the alleged witness' potential testimony or specifically why I did not call/interview a potential witness." Nieuwenhuis Affidavit (6/28/04), attached to petitioner's reply (docket no. 23).

this information; that Trotter's cousin was a member of the Wealthy Boys; that Trotter "needed some help in making it look like he had got robbed" because he owed the Wealthy Boys some money; and, that Trotter threatened to tell his cousin that petitioner gave his name to the police. *Id.* at 67-71.

Counsel supported petitioner's claim with the testimony of two police officers, Officers Dwyer and Linklater, who testified that when petitioner was apprehended, he stated that the robbery was a joke set up by Mr. Trotter. *Id.* at 108, 117-18. These witnesses appeared credible, especially since Officer Dwyer testified in the prosecution's case in chief. Trial Trans. II at 111-42; Trial Trans. III at 6-18. In short, counsel supported petitioner's hoax or joke theory with the testimony of the police officers at the scene of the crime. In contrast to these two officers, the Michigan Court of Appeals observed that Mr. Shaw had a credibility problem given his criminal history. This concern would be a sufficient reason to support counsel's decision not to call Mr. Shaw as a witness. *See, e.g., People v. Mitchell*, 454 Mich. 145, 166, 560 N.W.2d 600 (1997) ("calling witnesses whose testimony is not believable (even with regard to peripheral matters), may jeopardize an otherwise viable defense"). Accordingly, it appears to the court that counsel's decision not to call Mr. Shaw was one of trial strategy.

### 3. Petitioner suffered no prejudice

Furthermore, even if the court assumed that defense counsel was deficient for failing to present Mr. Shaw as a witness, petitioner fails to show that he was prejudiced by counsel's action.

#### a. The statements in Mr. Shaw's affidavit do not exonerate petitioner

First, while Mr. Shaw's affidavit corroborates petitioner's claim that he spoke with Mr. Trotter prior to the robbery, the affidavit does not exonerate petitioner. This is not merely a case of Mr. Trotter's word against petitioner. Evidence presented by three police officers contradict

17

petitioner's entire "joke" or hoax theory.

On re-direct examination, Officer Dwyer testified that, despite petitioner's comments, nothing about the scene of the crime appeared to be a "joke," but rather it appeared to be a major crime scene. *Id.* at 109-11.  The officer saw petitioner running away and observed Mr. Trotter at the top of the stairway bleeding.  *Id.* at 109-11. Once petitioner was handcuffed, he attempted to "ditch evidence" by taking his glove off.  *Id.* at 111.  While petitioner said it was "a joke" he gave no details. *Id.* at 112.  While Officer Linklater acknowledged that petitioner said the crime was a joke, she also testified that people in the act of committing a crime make outrageous statements that are clearly not true.  *Id.* at 117-18.

Finally, a rebuttal witness, Detective Kraus, undercut petitioner's premise for the hoax, i.e., that Mr. Trotter threatened to tell his cousin, Eddie Trotter, that petitioner had given his name to the police with respect to the Kwaze Kelly homicide.  Detective Kraus testified that he investigated three homicides, including Kwaze Kelly's, and that he found no kinship connection between the victim, Lamont Trotter and Eddie Trotter (E-Monster).  *Id.* at 135.

Given the weight of the government's evidence to counter petitioner's hoax theory, the court concludes that counsel's failure to call Mr. Shaw as a witness did not deprive him of a fair trial or a trial whose result is reliable.   *Strickland,* 466 U.S. at 687.

**b.**      **Any conversation between petitioner and Mr. Trotter does not exonerate petitioner from his convictions, which involved crimes committed against Mr. Kukawski**

Finally, the court rejects the premise of petitioner's claim, i.e.,  that Mr. Trotter could give him permission to kick open the door of the residence and rob Mr. Kukawski. As the trial court observed, even if there was some kind of arrangement between petitioner and one victim (Mr.

18

Trotter), the other victim (Mr. Kukawski) "was not a participant in any such agreement; and certainly never agreed to be roughed up, robbed at gunpoint and separated from his wallet."  Motion Trans. (2/23/01) at 9.

      **i.**      **Armed robbery of Mr. Kukawski**

Mr. Kukawski testified about the crime in graphic detail.  At about 3:00 a.m., he heard the door get kicked in and saw a man with a black mask.  Trial Trans. II at 38-39.  Mr. Kukawski testified that the masked man "grabbed me and put a gun to my head and started hitting me in the back of the head." *Id.* at 39.  Then, masked man dragged Mr. Kukawski into Mr. Trotter's room, threw him on the floor and hit him with the gun. *Id.*  The masked man yelled "where's the money? [w]here's the dope?" and started hitting Mr. Trotter. *Id.*  One of the men told Mr. Kukawski to keep his head down and "don't look up." *Id.* at 49.  When he was lying on the floor, one of the assailants hit him on the tailbone four or five times with an object that felt like a hammer. *Id.* at 42. The assailants stole his watch, a bracelet and a wallet with 15 or 20 dollars in it. *Id.* at 43. Mr. Kukawski testified that he was "scared to death." *Id.* at 45.

Mr. Trotter testified that two masked men kicked open the side door of the house. Trial Trans. II at 74. The men were armed with handguns. *Id.* at 74-5. They hit him in the head and upper body with a gun, a hammer and a screwdriver and stole about eighty dollars from him. *Id.* at 75-7, 80.  The men threatened to cut off his penis. *Id.* at 81.  The assailants left abruptly. *Id.* One of the assailants left a handgun on a bed which Mr. Trotter turned over to the police.

Even if Mr. Trotter was a party to the alleged "hoax" robbery, which is contrary to his testimony, nothing in Mr. Kukawski's testimony, or any other evidence of record, suggests that he agreed to be assaulted and robbed as part of a "hoax."

19

### ii.       First degree home invasion

Similarly, even if Mr. Trotter consented to have petitioner break into the house, this consent did not exonerate petitioner from committing first degree home invasion with respect to Kukawski.   The crime of first degree home invasion is set forth at M.C.L. § 750.110a, which provides in pertinent part as follows:

> [a] person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling . . . is guilty of home invasion in the first degree if either of the following circumstances exist:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

M.C.L. § 750.110a(2).   The term "without permission" is defined as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling."   M.C.L. § 750.110a(1)(c).   The statute does not define the word "permission."   However, "permission" has been defined as "[a] license to do a thing; an authority to do an act which, without such authority, would have been unlawful." *Blacks Law Dictionary* at 712, (5th Ed. 1979).

Even if Mr. Trotter agreed to have petitioner "come through the side door, and make it look good," such a statement cannot be construed as "permission" for petitioner to enter the dwelling for purposes of the home invasion statute.   The home invasion statute requires permission by the occupant of the dwelling at the time of entry.   *See, generally, People v. Jordan*, No. 259436, 2006 WL 1451558 at * 2 (Mich. App. May 25, 2006) (defendant entered apartment "without permission" for purposes of first degree home invasion when he was not invited in or given any signal that he could enter, but  simply walked in when a child opened the door to see who was there).

Here, petitioner's entry into the side door of the dwelling appears to be one of forced entry "without permission."  *See* M.C.L. § 750.110a(2). Petitioner admitted that he "kicked the door in."  Trial Trans. III at 71.  "Under Michigan law, any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking." *People v. Toole*, 227 Mich.App. 656, 659, 576 N.W.2d 441 (1998).  Such an entry would be inconsistent with "permission" to enter the dwelling.  Even if Mr. Trotter had told petitioner to "come through the side door, and make it look good," this permission did not include breaking down the door during the early morning hours.

Furthermore, petitioner presents no authority for the proposition that Mr. Trotter could authorize him to break into the dwelling and rob an occupant (Mr. Kukawski).  If Mr. Trotter had given petitioner permission to perform these acts against Kukawski, then Trotter would have been a conspirator with petitioner in violating the home invasion statute.  *See* M.C.L. § 750.157a ("[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy").  To allow an owner to give third-parties "permission" to break and enter a dwelling and terrorize the legal occupants of the dwelling is inconsistent with the purpose of this statute, i.e., "the deterrence of entries into occupied dwellings with an unlawful purpose."  *People v. Feketia*, No. 223545, 2002 WL 737787 at *2 (Mich.App. April 23, 2002).  Under the circumstances as alleged by petitioner, Mr. Trotter's statements did not constitute permission for purposes of first degree home invasion.

The Michigan Court of Appeals' resolution of this issue was neither contrary to,  or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented.  28 U.S.C. § 2254(d).   Accordingly, petitioner is not entitled to habeas relief on this claim.

> **3.     Petitioner's claim of judicial bias and request for a new judge on remand (Issue III).**

Finally, petitioner claims that the state trial judge was not impartial, that the judge violated his constitutional rights in denying a motion for a new trial and that he is entitled to a new judge on remand.  The Michigan Court of Appeals did not address this argument because there was no basis for a remand.  *Ezell*, No. 229369, slip op. at 1-2. Petitioner apparently argues that the judge was biased in denying his motion for a new trial and an evidentiary hearing, and that he is entitled to a remand and assignment of his case to a new judge.

The Supreme Court's standard for claims of judicial misconduct are grounded in the Due Process clause of the Fourteenth Amendment and found in *Liteky v. United States*, 510 U.S. 540 (1994).  *Brandt v. Curtis*, 138 Fed.Appx. 734, 741 (6th Cir. 2005).  In *Liteky*, the Court announced an exacting standard for determining judicial misconduct that violates the Due Process clause:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555.

Petitioner does not complain of judicial bias during the trial.  Rather, he complains of alleged judicial bias exhibited in the denial of his post-conviction motion for a new trial.  The gist

of petitioner's claim is that the trial judge was biased because he speculated about counsel's reasons for failing to call Mr. Shaw as a witness. In resolving the motion, the trial judge found that petitioner knew Mr. Shaw and that Shaw could have been summoned to testify at the trial. *Id.* at 15. The judge went on to state that, "[o]ne must assume that discussions between [petitioner] and [his counsel] suggested that this might not be a strategically good move." *Id.* The judge went on to observe that petitioner and his counsel had "a long and . . . successful relationship predating this case." *Id.* at 15. In one case, which involved a charge of carrying a concealed weapon (CCW), petitioner's counsel obtained probationary status in exchange for petitioner's cooperation with authorities in a separate murder case. *Id.* at 15-16. In another case, counsel "quite correctly" obtained an acquittal for petitioner in a five-week murder trial. *Id.* at 16-18.

> The judge also stated:
>
> So, my guess is that, if [petitioner] knew about Vonte Shaw, which, apparently, he did, that he discussed it at some length with [his counsel] and they, apparently, made the determination not to present Mr. Shaw; my guess is because of the fact that his questionable credibility as a well-known felon was likely to offset whatever value his somewhat ambiguous testimony might have offered.

*Id.* at 18-19.

> In addition, the trial judge found petitioner to be "a pleasant individual, on a personal level," and engaged in the following exchange with petitioner's counsel:
>
> Judge:   I've never had anything but the most courteous and respectful dialogue with him in court, and in the corridors on the way to court; and, but for the rather serious charges that are, from time to time, brought against him, I think he would be someone you could get along with famously.
>
> [Atty.]: Well, that's why I'm hoping to have the opportunity to argue resentencing in front of your honor.

Motion Trans. at 3. This exchange between the trial judge and petitioner's post-trial counsel does

not indicate that the judge was biased against petitioner. On balance, the judge's comments do not reveal opinions of "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. Accordingly, petitioner's claim of judicial bias should be denied.

## IV.   Recommendation

I respectfully recommend that petitioner's habeas petition be DENIED. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: July 25, 2006                          /s/ Hugh W. Brenneman, Jr.
                                              Hugh W. Brenneman, Jr.
                                              United States Magistrate Judge



ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).